IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| MCCALL LAW FIRM, PLLC, on behalf of itself and all other entities and persons similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:15CV00737 KGB |
| | ) | |
| CRYSTAL QUEEN, INC., d/b/a CRYSTAL TRAINING, *et al*., | ) ) | |
| | ) | |
| Defendants. | ) | |

**INDIVIDUAL DEFENDANTS' CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Individual Defendants Adriana Galan and Rudolf Galan have presented the Court with competent evidence that shows their lack of minimum contacts with the State of Arkansas. Plaintiff's consolidated response to the Individual Defendants' respective motions to dismiss for lack of personal jurisdiction misconstrues the Individual Defendants' arguments, relies on speculation and incompetent evidence, and ultimately misses the point. The gist of Plaintiff's argument is that each of the Individual Defendants has minimum contacts with Arkansas because co-Defendant Crystal Queen, Inc. ("Crystal Queen") is Rudolf Galan's business, Mr. Galan runs Crystal Queen from his home, Adriana Galan is Rudolf Galan's spouse and lives at the same residence, Crystal Queen markets and offers QuickBooks and Excel training classes in Arkansas, and Rudolf Galan obtained a UPS Box in the State of New York to which Crystal Queen mail can be sent. Plaintiff's arguments are substantively incorrect and rely on unverified conclusory allegations contained in the Amended Complaint, speculation, and the incompetent declaration testimony of Plaintiff's counsel of record, Joseph P. Leniski, who did not even swear his

1603132

declaration upon personal knowledge.  For the reasons stated *infra*, as well as in the Individual Defendants' respective motions to dismiss and supporting briefs and declarations, the Court should grant both pending motions.[1]

### A. Plaintiff Has Failed To Show That Adriana Galan Has Sufficient Minimum Contacts With the State of Arkansas To Subject Her To Personal Jurisdiction.

Plaintiff has not proffered any evidence whatsoever that Adriana Galan has minimum contacts with the State of Arkansas.  Plaintiff speculates and in essence opines that the Court should assert jurisdiction over Ms. Galan simply because she is married to co-Defendant Rudolf Galan, who runs Crystal Queen from home.  Personal jurisdiction does not work that way.

Plaintiff concedes that the State of Arkansas does not have general jurisdiction over Ms. Galan, and instead relies on specific jurisdiction.  Specific jurisdiction is only proper where the contacts proximately result from actions by the defendant that create a "substantial connection" with the state.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  To satisfy due process, a defendant's contacts with the forum must be more than "attenuated," "random or fortuitous." *Id.*  The "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  "In judging minimum contacts, the court properly focuses on the relationship among the defendant, the forum and the litigation." *Calder v. Jones*, 465 U.S. 783,

---

[1]   Adriana Galan additionally argues, based on her declaration sworn on personal knowledge, that she was not served with the Summons and Amended Complaint; rather it was left at her driveway.  Plaintiff has challenged Ms. Galan's evidence through the certificate of service provided by a process server.  Such certificate is suspect, however, and should not be trusted.  Putting aside the factual disparities between the certificate and Ms. Galan's Declaration, the certificate does not even establish that the Summons and Complaint actually were delivered to Ms. Galan.  Assuming, *arguendo*, that the Summons and Complaint were actually handed to an adult person, which Ms. Galan vehemently denies, there is no evidence whatsoever that such documents were handed to Ms. Galan or some other adult competent to accept service on her behalf.  Indeed, there is no evidence to suggest that the process server knows or could even identify Ms. Galan.  Consequently, the Court should not rely on the certificate.

1603132

788 (1984); *Steinbuch v. Cutler*, 518 F.3d 580, 590 (8th Cir. 2008) (*citing Calder*, 465 U.S. at 788).

Here, Ms. Galan has absolutely no contacts with the State of Arkansas.  In her motion to dismiss, Ms. Galan established that she is a citizen of Canada and resides in Stittsville, Ontario, Canada.  (*See* Declaration of Adriana Galan ("A. Galan Decl.") ¶ 3.)  She has never visited the State of Arkansas, worked in the State of Arkansas or conducted business in the State of Arkansas.  (A. Galan Decl. ¶¶ 5-7.)  She has never employed any individual in the State of Arkansas, nor has she ever owned or leased any real estate in the State of Arkansas.  (A. Galan Decl. ¶¶ 7-8.)  She has never maintained a mailing address, post office box, telephone, bank account or safe deposit box in the State of Arkansas.  (A. Galan Decl. ¶ 9.)  She has no immediate family members in the State of Arkansas, has never owned, possessed or controlled any asset or thing of value in the State of Arkansas, and has never owned any interest in any trust administered by the State of Arkansas.  (A. Galan Decl. ¶¶ 10-13.)  Ms. Galan has not performed any duties as a director or officer of any Arkansas corporation, has not managed any day-to-day operations of any business in the State of Arkansas, and has not personally been a party to a contract made within the State of Arkansas.  (A. Galan Decl. ¶¶ 13-15.)  She has never paid taxes in the State of Arkansas, nor has she held any license of any kind within the State of Arkansas. (A. Galan Decl. ¶¶ 16-17.)

In the face of these uncontroverted facts, Plaintiff has the burden to demonstrate some evidentiary basis to establish minimum contacts with the State of Arkansas.  In a feeble attempt to do so, Plaintiff relies on the following bald and conclusory averments against Ms. Galan in the unverified Amended Complaint fashioned by Plaintiff's counsel, to wit:

1603132

3

1. The Individual Defendants allegedly "do business under the name Crystal Training." (Am. Compl. ¶ 4.)

2. The Individual Defendants are the "coextensive owners" of a UPS box utilized by Crystal Queen.  (Am. Compl. ¶ 4; Pl.'s Resp. 4.)

3. Crystal Queen's business address is the same address as the Individual Defendants' residence.  (Am. Compl. ¶ 56; Pl.'s Resp. 5.)

4. The Individual Defendants "purported to conduct business" in Arkansas.  (Am. Compl. ¶ 7; Pl.'s Resp. 5.)

5. Crystal Queen scheduled a "series of QuickBooks and Excel training classes" for dates in Little Rock, Arkansas.  (Am. Compl. Ex. A; Pl.'s Resp. 5.)

6. The Individual Defendants "created the fax advertisement."  (Am. Compl. ¶ 20; Pl.'s Resp. 5.)

7. The Individual Defendants "sent the fax advertisement."  (Am. Compl. ¶¶ 21-22; Pl.'s Resp. 5.)

8. The Individual Defendants are the "alter ego" of Crystal Queen.  (Am. Compl. ¶¶ 4, 57; Pl.'s Resp. 4.)

Not one of these alleged averments as applied to Ms. Galan is sufficient or supported by any actual competent evidence.  Indeed, the only competent evidence before the Court is that Ms. Galan was not personally involved in sending the faxes at issue in this case.  (A. Galan Decl. ¶¶ 31-34.)   She did not have any specific personal knowledge that such faxes were being transmitted (A. Galan Decl. ¶¶ 30-34.); she did not review the contents of any specific faxes prior to transmission (A. Galan Decl. 30.); she did not specifically authorize, approve or direct the sending of such faxes, nor did she have any role authorizing, approving or directing the

sending of such faxes (A. Galan Decl. ¶ 31.); she did not determine or provide the recipient fax numbers to which any such faxes were sent (A. Galan Decl. ¶ 32.); she did not provide a referral source for obtaining fax numbers to which any such faxes were sent (A. Galan Decl. ¶ 33.); and she did not have any personal knowledge of the fax numbers or identity of the individuals and entities who allege to have received the specific faxes at issue (A. Galan Decl. ¶¶ 34.).

Moreover, Ms. Galan is not currently and has never been responsible for any marketing or advertising by or on behalf of Crystal Queen. (A. Galan Decl. ¶¶ 20, 27.) She has no personal knowledge as to whether Crystal Queen has ever transmitted facsimiles for marketing purposes. (A. Galan Decl. ¶ 28.) Ms. Galan's involvement with Crystal Queen has consisted of nothing more than performing occasional administrative functions such as preparing class schedules. She has never been a full-time or regular Crystal Queen employee. (A. Galan Decl. ¶¶ 22.)

Plaintiff's unverified and conclusory allegations cannot overcome this strong evidence proffered by Ms. Galan. *Howard v. Cty. Court of Craighead Cty.*, 644 S.W.2d 256, 257 (Ark. 1983) (holding that plaintiff's complaint was "fatally deficient" because it failed to allege that the cause of action arose out of defendant's acts within Arkansas).

The fact that Ms. Galan's name may appear as an owner of or had access to a UPS Box in New York State obtained by her husband is of no import or value here. In the first instance, a UPS Box in New York State cannot form the minimum contacts necessary with the State of Arkansas. *John Norrell Arms, Inc. v. Higgins*, 962 S.W.2d 801, 804 (1998) (holding that "the use of arteries of interstate mail and banking facilities, standing alone, is insufficient to satisfy due process in asserting long-arm jurisdiction over a nonresident.") (Internal citation omitted.) Moreover, there is no showing whatsoever that Ms. Galan applied for the UPS Box, signed any

application for the UPS Box, provided her drivers' license to obtain the UPS Box, visited the UPS Box, or even knew she was listed on the UPS Box.

The fact that Crystal Queen's registered address is a home residence also is of no import. Many people run businesses from their homes. It does not necessarily follow that Crystal Queen is Ms. Galan's business, that she is involved with the business of Crystal Queen beyond what she has stated, that she is the alter ego of Crystal Queen, that she was involved in any faxing activity that forms the basis of the Complaint, or that she was even aware of the alleged faxing activity.

Other than the unverified allegations of the Complaint, the only "evidence" Plaintiff offers to support its bald averments is a declaration provided by Plaintiff's counsel, Joseph P. Leniski (Pl.'s Resp., Ex. A), which is inadmissible and a violation of the Arkansas Supreme Court's clear directive that a lawyer cannot act as both an advocate and witness. *Smith v. Wharton*, 78 S.W.3d 79, 83 (Ark. 2002). The Arkansas Rules of Professional Conduct specifically prohibit such a dual role:

> A lawyer shall not act as advocate at trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Ark. R. Prof'l Conduct 3.7(a). The reasons for prohibiting an attorney from being both advocate and witness are sound:

> (1) An advocate who becomes a witness may be in the unseemly position of arguing his own credibility; (2) the roles of advocate and witness are inconsistent and should not be assumed by one individual; and (3) the attorney should not act as both trial counsel and a material witness because of the appearance of impropriety.

*Weigel v. Farmers Ins. Co., Inc.*, 158 S.W.3d 147, 153 (Ark. 2004).

The prohibition applies to both live and written testimony. *See Weigel*, 158 S.W.3d at 155 ("Regardless of whether [the attorney] testifies in person or through a set of written

1603132

stipulations, he is still a witness, and he will be in the unseemly position of arguing his own credibility . . . ."); *McIntosh v. Sw. Truck Sales*, 800 S.W.2d 431, 432 (Ark. 1990) ("When the affiant is an attorney in the case, and the affidavit is submitted in support of a motion, whether attached to the motion itself or to the brief, it is tantamount to the attorney testifying.").  And the prohibition equally applies to proceedings involving procedural matters.  *See*, *e.g.*, *Int'l Resource Ventures, Inc. v. Diamond Mining Co. of Am., Inc*. 934 S.W.2d 218 (Ark. 1996) (evidentiary affidavit of attorney attached to response to motion to modify an order of dismissal correctly resulted in disqualification of attorney); *Arthur v. Zearly*, 895 S.W.2d 928 (Ark. 1995) (attorney testimony during class certification hearing deemed improper and disregarded by the court); *Calton Props., Inc. v. Ken's Discount Building Materials, Inc*., 669 S.W.2d 469, 471 (Ark. 1984) (attorney affidavit setting out facts involving service of process issues is "nothing less than an attempt by the attorney to disguise testimony while that attorney is still serving as an advocate."). The proper remedy is for attorney testimony to be disregarded or otherwise stricken by the Court. *McIntosh*, 800 S.W.2d at 432 ("Accordingly, it was wrong for [the attorney] to serve as a witness and an attorney, and we will not consider the affidavit as evidence."); *Calton Props., Inc*., 669 S.W.2d at 471 ("The affidavit is not evidence and we do not consider it.").

The prohibition stated in Rule 3.7(a) applies to opposing counsel in this action.[2]  Here, the Leniski Declaration specifically attempts to supply facts regarding contested issues of fact, namely whether either or both of the Individual Defendants is subject to personal jurisdiction in Arkansas.  Consequently, each of the statements in the Leniski Declaration (and the exhibits it

---

[2]  This Court has adopted the American Bar Association's Model Federal Rules of Disciplinary Enforcement, which provide that the District Court must apply the code of professional responsibility adopted by the highest court of the state in which the District Court sits which, in this case, is Arkansas.  *See* Local Rule 83.5 for the Eastern & Western Districts of Arkansas; Rule IV(B) ABA Model Federal Rules of Disciplinary Enforcement; *see also Greene v. Norris*, No. 5:04CV00373 SWW, 2011 U.S. Dist. LEXIS 111117 (E.D. Ark. Sept. 27, 2011).

attempts to introduce) should be disregarded and the Declaration stricken in its entirety. *Calton Props., Inc.*, 669 S.W.2d at 471.[3]

Ultimately, even if the Court could consider opposing counsel's proffered declaration, it should be disregarded because it does not set forth facts on matters regarding which counsel has personal knowledge or is competent to testify.[4]

### B. Plaintiff Has Failed To Show That Rudolf Galan Has Sufficient Minimum Contacts With the State of Arkansas To Subject Him To Personal Jurisdiction.

Plaintiff also has not proffered competent evidence to establish that Rudolf Galan has minimum contacts with the State of Arkansas to subject him to the Court's jurisdiction. Again, Plaintiff relies on alleged activities of the corporation, Crystal Queen, regarding marketing and scheduling QuickBooks and Excel Training classes in Arkansas, without regard to whether Mr. Galan himself undertook any such activities and, if so, whether such activities were undertaken in the State of Arkansas.

In support of his motion to dismiss, Mr. Galan presented testimony in the form of a sworn declaration in which he established that he has absolutely no connection with the State of Arkansas. He is a citizen of Canada and resides in Stittsville, Ontario, Canada. (*See* Declaration of Rudolf Galan ("R. Galan Decl.") ¶ 3.) He has never visited the State of Arkansas, worked in the State of Arkansas or personally conducted business in the State of Arkansas. (R. Galan Decl. ¶¶ 5-7.) Mr. Galan has never employed any individual in the State of Arkansas, nor has he ever

---

[3]  If the Court is inclined to consider the Leniski Declaration, Arkansas law suggests that counsel should withdraw or the Court should consider disqualifying counsel. *See Enzor v. State*, 559 S.W.2d 148, 151 (Ark. 1977) ("An attorney who is to testify in an action should withdraw from the litigation. On the other hand, if an attorney is going to serve as an advocate for his client, he should refrain from testifying in the action."; *see also Int'l Resource*, 934 S.W.2d at 221 ("[T]he trial court correctly disqualified [the attorney] from acting as an attorney after he chose to submit the evidentiary affidavit and to testify.").

[4]  If the Court is inclined to consider the Leniski Declaration and the unverified allegations of the Amended Complaint, the Individual Defendants respectfully request that they be allowed to take counsel's and Plaintiff's depositions regarding the statements set forth in the Declaration and the unverified Amended Complaint, and counsel's and Plaintiff's personal knowledge thereof.

1603132

owned or leased any real estate in the State of Arkansas. (R. Galan Decl. ¶¶ 8-9.) He has never maintained a mailing address, post office box, telephone, bank account or safe deposit box in the State of Arkansas. (R. Galan Decl. ¶ 10.) He has no immediate family members in the State of Arkansas, has never owned, possessed or controlled any asset or thing of value in the State of Arkansas, and has never owned any interest in any trust administered by the State of Arkansas. (R. Galan Decl. ¶¶ 11-13.) Mr. Galan has not performed any duties as a director or officer of an Arkansas corporation, has not managed any day-to-day operations of any business in the State of Arkansas, and has not personally been a party to a contract made within the State of Arkansas. (R. Galan Decl. ¶¶ 14-16.) He has never paid taxes in the State of Arkansas, nor has he held any license of any kind within the State of Arkansas. (R. Galan Decl. ¶¶ 17-18.) Mr. Galan additionally testified that any actions he may have taken with respect to the day-to-day operations of Crystal Queen were done solely for and on behalf of the company to further its business, and not in Mr. Galan's individual capacity. (R. Galan Decl. ¶ 25.)

To circumvent the fatal flaws in their argument, Plaintiff instead resorts to parroting the self-serving and conclusory allegations of the unverified Complaint that speculate without personal knowledge or foundation as to purported actions undertaken by Mr. Galan personally. Such unverified allegations do not rise to the level of competent evidence, and Mr. Galan's declaration stands uncontroverted. *Howard*, 644 S.W.2d at 257.

Plaintiff also attempts to rely on the self-serving declaration of its attorney, Joseph P. Leniski. As discussed above, such allegations and testimony by counsel should be disregarded as antithetical to Arkansas jurisprudence, the Arkansas Rules of Professional Conduct, and the American Bar Association's Model Federal Rules of Disciplinary Enforcement. *See* discussion at pages 5-7, *supra*.

1603132

9

Plaintiff also again relies on the UPS Box.  But as discussed above, a UPS Box in New York State does not provide the minimum contacts necessary with the State of Arkansas. *Higgins*, 962 S.W.2d at 804, *supra*.

Indeed, the only additional theory posited by Plaintiff specific to Mr. Galan is that he was named along with Crystal Queen in a non-prosecuted citation issued by the FCC which does not appear to rely on any activity in *Arkansas* by Mr. Galan (or Crystal Queen for that matter).  Such theory is unavailing.

The FCC Citation is merely an accusation; it is not a finding on the merits that either Crystal Queen or Mr. Galan violated the TCPA or, more importantly, violated the TCPA *with respect to the singular fax at issue in this case*.  Further, the FCC Citation does not identify any specific activity in Arkansas by Mr. Galan, a prerequisite for exercise of personal jurisdiction over Mr. Galan.  Plaintiff's suggestion that contacts with Arkansas can be inferred from the Citation is simply wrong.

Finally, any alleged violations of the TCPA cited by the FCC are irrelevant to the instant case, in which the Court must examine the specific circumstances pertaining to the fax at issue. To establish liability in a TCPA case, a plaintiff (or the government) must prove every element for each individual fax at issue.  TCPA cases, by their very nature, are fact specific inquiries requiring an analysis of the circumstances surrounding each particular fax transmission.  *See Levitt v. Fax.com*, No. 05-549, 2007 WL 3169078, at *3 (D. Md. May 25, 2007).  Every element of an alleged TCPA violation must be proven with respect to each individual fax transmission and requires an "inquiry into the particular circumstances of each transmission."  *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995).  Plaintiff cannot prove its case by generally arguing that Crystal Queen allegedly violated the TCPA on another occasion not

involving the specific fax at issue here.  The specific fax transmission at issue here must be decided on its own merits.

### C. Plaintiff Has Offered No Evidence To Show That The Court Has Personal Jurisdiction Over Either Adriana Or Rudolf Galan Under An Alter Ego Theory.

Plaintiff also argued in its response that Adriana Galan and Rudolf Galan each is the alter ego of Defendant Crystal Queen.  Plaintiff has not proffered any competent evidence to support such a theory, which is erroneous.

As with its minimum contacts theory, the gravamen of Plaintiff's "alter ego" theory against Ms. Galan is that (1) she is named on the application for UPS Box in the State of New York obtained by Mr. Galan; (2) Crystal Queen's business address is the Galans' home address, and (3) the insurance policy cited by Mr. Galan for the UPS Box appears to be a homeowner's policy.

Plaintiff does not present a single fact to support the notion that Crystal Queen is Ms. Galan's business or that she at any time has used Crystal Queen as an instrumentality to conduct her own personal business.  Indeed, Plaintiff offers not a scintilla of evidence that Ms. Galan, who is not a fulltime employee of Crystal Queen, is even involved with the business in any way beyond performing occasional administrative functions such as preparing class schedules.  There simply is no evidence that Ms. Galan at any time used corporate assets as her own.

Similarly, none of the allegations indicate that Mr. Galan abused the corporate form in any way or that Mr. Galan is indistinguishable from Crystal Training.  At all times, Crystal Queen has adhered to corporate formalities, such as by keeping its own financial and bank records and filing its own tax returns.  (R. Galan Decl. ¶ 26.)  Such testimony is uncontested.

The continued reliance on the UPS Box to establish an alter ego theory is unavailing. None of the cases Plaintiff cited in support of its alter ego theory permit courts to pierce the

corporate veil based on an individual defendant registering a mailbox on behalf of a corporation. *See, e.g.*, *Rhodes v. Veith*, 96 S.W.3d 734, 738 (Ark. Ct. App. 2003) (reversing trial court's decision to pierce to corporate veil because "the trial court found no other basis for holding appellants personally liable for the corporates actions"). Also, the case at bar is distinguishable from *Winchel v. Craig,* in which the appellate court affirmed the lower court's decision to pierce the corporate veil. 934 S.W.2d 946, 951 (Ark. Ct. App. 1996). In *Winchel*, the appellate court agreed with the trial court's reasoning that the evidence supported piercing the corporate veil because "the corporation was a sham", "it was inadequately capitalized, and because of the way its business was transacted and its records were kept . . .." *Id.* at 947, 950-51; *see also In re Ozark Rest. Equip. Co., Inc.*, 816 F.2d 1222, 1231 (8th Cir. 1987) (holding that the trustee in question did not have standing to bring an alter ego action on behalf of a debtor corporation's creditors); *see In re Wright*, 353 B.R. 627, 645-46 (Bankr. E.D. Ark. 2006) (reasoning that defendants disregarded corporate structure by using corporate funds to make loans to shareholders and family members; not repaying the loans; and using corporate funds to pay life insurance premiums and shareholder medical expenses); *Humphries v. Bray*, 611 S.W.2d 791, 792-94 (Ark. Ct. App. 1981) (piercing the corporate veil where it was "almost impossible to distinguish at times one business from the other"; defendant used the same address for three separate businesses; and used three separate business bank accounts interchangeably to pay employee salaries).

Here, Plaintiff has not proffered any such evidence, and Plaintiff's unsupported alter ego argument must fail.

WHEREFORE, Individual Defendants Rudolf Galan and Adriana Galan respectfully request that the Court grant their respective motions to dismiss for lack of personal jurisdiction.

Dated:  June 24, 2016

Respectfully submitted,

By: /s/Mary Ann L. Wymore
Mary Ann L. Wymore, Mo. Bar No. 44041
(upon *pro hac vice* application)
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090 - Telephone
(314) 345-5488 – Facsimile
mlw@greensfelder.com – Email

Martin A. Kasten, Ark. Bar No. 99100
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
(501) 370-1456 - Telephone
(501) 244-5330 - Facsimile
mkasten@fridayfirm.com - Email

*Attorneys for Defendants Crystal Queen, Inc., and Rudolf Galan and Adriana Galan (appearing specially to contest personal jurisdiction)*

1603132

<u>**CERTIFICATE OF SERVICE**</u>

   I, Mary Ann L. Wymore, hereby certify that on the 24th day of June, 2016, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF System which will send notification of such filing to the following:

Joe P. Leniski, Jr., Esquire     Alex G. Streett, Esquire
Branstetter, Stranch & Jennings, PLLC  James A. Streett, Esquire
223 Rosa L. Parks Ave, Suite 200   Streett Law Firm, P.A.
Nashville, TN 37201       107 West Main
*Attorney for Plaintiff*       Russellville, AR 72801
              *Attorneys for Plaintiff*


         /s/ Mary Ann L. Wymore

1603132