IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| MCCALL LAW FIRM, PLLC, on behalf of itself and all other entities and persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CRYSTAL QUEEN, INC., d/b/a CRYSTAL TRAINING, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No.: 4:15CV00737 KGB<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL AND MOTION FOR ISSUANCE OF LETTERS ROGATORY**

Defendants Crystal Queen, Inc. ("Crystal Queen") and Rudolf Galan ("RGalan") (collectively "Defendants"), by and through their undersigned counsel, respectfully submit their Consolidated Memorandum in Opposition to Plaintiff's Motion to Compel Against Defendants Crystal Queen, Inc., d/b/a Crystal Training and Rudolf Galan and Points of Authority in Support and Plaintiff's Motion for Issuance of Letters Rogatory.

**INTRODUCTION**

The gravamen of Plaintiff's putative class action lawsuit is that Defendants violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, 3201 *et seq.*, by sending Plaintiff a single unsolicited facsimile marketing a Quicken training class to be presented by Crystal Queen at a hotel in Little Rock, Arkansas. By Plaintiff's own account, the "heart" of both Plaintiff's class discovery and substantive discovery boils down to three categories: (1) a UPS store located in Ogdensburg, NY at which Crystal Queen is alleged to have received mail; (2) various hotels and convention centers in the United States where training classes were

presented by independent contractors in the United States, and alleged payment processing vendors in the United States that allegedly paid contractors and/or distributed materials; and (3) facsimiles directed to recipients in the United States regarding training classes scheduled to be held in their geographic area. While Defendants disagree that all of these stated categories actually are pertinent to the lawsuit, it is noteworthy that Plaintiff's discovery is wildly broader and that Plaintiff's discovery motions also are not confined.

Rather, Plaintiff's Motion to Compel requests, without any legal or factual support, that the Court order Crystal Queen and RGalan to produce all information and documents responsive to Plaintiff's overly broad interrogatories and requests for production (whether or not relevant) that are not implicated by the Ontario Business Records Protection Act ("OBRPA") or Canada's Personal Information Protection and Electronic Documents Act ("PIPEDA").[1] Plaintiff also seeks issuance of a similarly overly broad Letter Rogatory, which should be limited to documents and information maintained solely in the Province of Ontario and which are relevant to Plaintiff's underlying lawsuit or at least documents *reasonably* calculated to lead to the discovery of admissible evidence.[2] Finally, Plaintiff asks the Court to assess against Defendants

---

[1] OBRPA, R.S.O., ch. B.19, § 1 (1990) (Can.), prohibits the removal of any business "record, statement, report or material in any way relating to any business carried on in Ontario" from the province of Ontario, if the documents in question are maintained solely in Ontario. This includes divulging information that is derived solely from the contents of documents that may not otherwise be produced under OBRPA. Violations of OBRPA are punishable by contempt of court and one year's imprisonment. R.S.O., ch. B.19, §§ 2-3. Because Crystal Queen is a Canadian corporation organized and existing under the laws of the province of Ontario, and its computers, data, and documents are maintained solely in Ontario, Crystal Queen is bound by the prohibitions of OBRPA. PIPEDA prohibits the disclosure of personal identifying information to third parties. As a Canadian corporation, Crystal Queen also is bound by the prohibitions of PIPEDA from disclosing to third parties personal information concerning an individual.

[2] Plaintiff confounds its motion to compel with its discussion regarding the applicability of OBRPA and PIPEDA. While the applicability of these statutes is well established, including by the case Plaintiff cited, the issue is moot as Plaintiff has begun the process to comply by seeking

attorney's fees and costs associated with its Motion to Compel.  Plaintiff's Motion to Compel and requested Letter Rogatory miss the mark and should be denied, as should Plaintiff's request for attorney's fees, which is unwarranted.

Each of Plaintiff's motions fail to account for Crystal Queen's and RGalan's substantive specific objections to the overly broad and burdensome discovery propounded by Plaintiff, including that nearly all of the document requests and interrogatories seek documents and information that are not pertinent to resolving the issues in this case and go well beyond the permissible scope of discovery.  Plaintiff also fails to acknowledge that it already has certain of the documents it claims to be at the "heart" of its discovery needs.

For example, at the outset of this litigation, Plaintiff subpoenaed documents pertinent to the Odgensburg, NY UPS box.  Indeed, Plaintiff successfully relied on those documents in opposing the individual defendants' motions to dismiss for lack of personal jurisdiction. Similarly, Plaintiff already has the fax at issue, which Plaintiff alleges to have received in violation of the TCPA.  As discussed below, faxes beyond the single one at issue simply are not relevant to this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Similarly irrelevant are documents pertinent to the hotels and convention centers at which Crystal Queen's Quicken training classes were held.  The logistics of the classes has absolutely no bearing on either the issues or defenses of this case.  In any event, Plaintiff has subpoenaed the same irrelevant information from the hotel where the class that is the subject of the singular fax at issue was held.

---

a letter rogatory and is not moving to compel production of OBRPA or PIPEDA covered documents and information.  Moreover, Plaintiff ignores that OBRPA and PIPEDA are not the sole basis of Defendants' objections, choosing instead not to address Defendants' objections that are not based on either statute.

Another illustrious example of the overbreadth of Plaintiff's discovery requests is the scope of confidential and proprietary information Plaintiff seeks regarding virtually every nuance of Defendants' private and confidential financial information. The financial data Plaintiff seeks has no bearing whatsoever on Plaintiff's claims under the TCPA. At best, a limited amount of financial data may be relevant to settlement negotiations or Defendants' ability to defend a class action lawsuit or to withstand a class-wide judgment should Plaintiff prevail.[3] Plaintiff has failed in its motions to disclose to the Court, however, that Defendants and co-Defendant Adriana Galan ("AGalan") previously produced their respective confidential financial statements to Plaintiff's counsel as part of settlement negotiations. Further confidential information of this nature is unnecessary.

Another example of overbreadth is Plaintiff's unrestricted and burdensome requests for documents and information regarding faxing activity by each defendant at any time. Such unlimited requests are so overly broad and beyond the scope of legitimate discovery that they amount to harassment.

A review of Plaintiff's interrogatories and requests for production, along with Defendants' objections thereto, demonstrates that Defendants tendered valid objections to Plaintiff's interrogatories and requests for production. It also is noteworthy that Plaintiff's motions do not actually challenge the validity of Defendants' objections. For these reasons, and those discussed in detail below, the Court should deny Plaintiff's Motion to Compel in its entirety, sustain Defendants' objections, and limit the Letter Rogatory to discovery regarding the creation and transmission of the single fax at issue.

---

[3] Defendants' counsel recently advised Plaintiff's counsel that Defendants can no longer afford to defend this lawsuit, do not have the financial means to satisfy a class action judgment, and have asked Defendants' counsel to withdraw. To that end, defense counsel anticipate filing their motions to withdraw and a motion to strike class allegations by Monday, October 2, 2017.

## **FACTUAL AND PROCEDURAL BACKGROUND**

On January 30, 2015, Plaintiff filed its Class Action Complaint (Doc. 3) in Arkansas County State Court alleging violations of the TCPA against Defendants Crystal Queen, Rudolf Galan and Adriana Galan.  On September 21, 2015, Plaintiff filed its First Amended Class Action Complaint with the Arkansas State Court.  (Doc. 4.)  Defendants removed the case from state court to this Court on December 3, 2015.  (Doc. 1.)

Plaintiff served its requests for production on Crystal Queen on March 30, 2017 and its consolidated interrogatories and requests for admissions on May 31, 2017.  Plaintiff served consolidated interrogatories, requests for admissions and requests for production on individual defendants RGalan and AGalan on June 20, 2017.  Pursuant to the parties' agreement, Crystal Queen served its valid objections to the discovery on July 7, 2017, at which time it also answered Plaintiff's requests for admission.  Defendants RGalan and AGalan each served their valid objections to Plaintiff's discovery on July 25, 2017, at which time the individual defendants also answered the requests for admissions and AGalan provided additional answers to the requests for production and interrogatories.  While Defendants each noted their OBRPA and PIPEDA objections to the extent applicable, each also asserted various other specific objections to Plaintiff's discovery requests.

After reviewing Defendant's objections, Plaintiff wrote Defendants a conclusory letter generally demanding "production of all documents and information not covered by OBRPA and PIPEDA, particularly [ ] concerning information and documents transmitted into and/or maintained in the United States." (Doc. 51 at 2, ¶ 3.)  Subsequently, counsel for the parties, on more than one occasion, discussed the OBRPA and PIPEDA objections.  Beyond these cursory facts, Plaintiff's recitation of the background in this case is misleading and incomplete.

Specifically, the parties never discussed the bulk of Defendants' other objections before Plaintiff filed its Motion to Compel (Doc. 51) and Motion for Letters Rogatory (Doc. 50) on September 7, 2017.

## ARGUMENT

I. **DEFENDANTS PROPERLY OBJECTED TO MANY OF PLAINTIFF'S DISCOVERY REQUESTS AS OVERLY BROAD BECAUSE THEY SEEK INFORMATION AND DOCUMENTS THAT DO NOT PERTAIN TO THE FAX AT ISSUE IN THIS CASE.**

The biggest flaw in Plaintiff's Motion to Compel is that the majority of Plaintiff's discovery requests are overly broad in scope such that they go well beyond the single fax at issue in this lawsuit and in some instances seek to discover information and documents that are not pertinent either to Plaintiff's claims or Defendants' defenses. To prevail on its TCPA claim, Plaintiff must prove that Defendant Crystal Queen (1) sent Plaintiff a fax, (2) that was unsolicited (*i.e.*, was sent without the recipient's prior express invitation or permission, and to a recipient with whom Crystal Queen did not have an established business relationship at the time of the transmission), (3) was an advertisement, and (4) was sent to a telephone fax machine. The TCPA allows a person or entity to bring a private right of action "based on *a* violation" of the statute or regulation to "enjoin *such violation*," or to recover monetary loss from "such *a violation*, or to receive $500 in damages for *each such violation*, whichever is greater." 47 U.S.C. § 227. The language of the statute clearly indicates that *each* fax that violates the TCPA is a separate, independent claim.

TCPA cases are fact specific inquiries requiring an analysis of the circumstances surrounding each fax transmission. *See, e.g.*, *Levitt v. Fax.com*, No. 05-549, 2007 WL 3169078, at *3 (D. Md. May 25, 2007). Every element of an alleged TCPA violation must be proven with respect to each individual transmission and requires an "inquiry into the particular circumstances

6

of each transmission." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 404 (E.D. Pa. 1995). A plaintiff must prove that each "specific transmission to its machine was without prior express invitation or permission on its part." *Levitt*, 2007 WL 3169078, at *3. Accordingly, discovery in this case should be limited to the single fax Plaintiff alleged it received on or about January 15, 2015 ("the fax at issue"). Here, Plaintiff's' discovery requests are not so limited.

As discussed below, Plaintiff's numerous discovery requests, with the exception of Interrogatory Nos. 8, 12, 13, 15, 17 and 24 and Document Request Nos. 34-36, are overly broad with respect to time and because they seek information that is not pertinent to the fax at issue. For example, Interrogatory No. 1 asks:

> **Interrogatory No. 1:** Identify any contractor, agent, or any third-party vendor which provided you the service of creating, and/or transmitting faxes, by or on behalf of Crystal, for the purpose of marketing goods, products, and or services.

This interrogatory is plainly overbroad in time because it essentially asks Defendants to identify every contractor, agent, or third-party vendor Crystal Queen ever used to create or transmit faxes, without regard to when their services were provided. Furthermore, this interrogatory is overbroad to the extent it seeks information beyond what is pertinent to the fax at issue because it seeks information regarding every fax Crystal Queen ever sent for the purpose of marketing its goods, products, or services, regardless of whether any such faxes were ever sent to Plaintiff. Because each alleged unlawful fax must be analyzed based on the particular circumstances of each transmission, the scope of legitimate discovery in TCPA actions should necessarily be limited to the single fax at issue. If the rule were otherwise, Defendants would be subjected to a fishing expedition for the sole purpose of divulging additional and otherwise, unknown potential claims, and other information about Defendants' business activities, which have no bearing on Plaintiff's claims. *See Amcast Indus. Corp v. Detrex Corp.*, 138 F.R.D. 15,

118 (N.D. Ind. 1991) (holding that the scope of discovery should not be interpreted to be so expansive as to allow a party "to roam in the shadow zones of relevancy and explore matter which does not presently appear germane on the theory that it might conceivably become so.").

Because Plaintiff alleged in its Complaint that the single fax it received on January 15, 2015, is the basis for its claim, the facts concerning that specific fax are what give rise to this litigation. Accordingly, discovery should be limited to the single fax Plaintiff received from Defendant Crystal Queen.

### A. Several of Plaintiff's Discovery Requests Seek Confidential Financial Information and Such Information is not Pertinent to the Issues in This Case.

Defendants appropriately objected to some of Plaintiff's discovery requests, including Interrogatory Nos. 2 and 14 and Document Request Nos. 12, 17-26 and 28-33, to the extent they seek confidential financial information. For example, Interrogatory No. 14 and Document Request No. 12 ask:

> **Interrogatory No. 14:** Identify all monetary amounts received by Rudolf and Adriana Galan as a result of their employment and/or stakeholder interest in Crystal.

Other illustrative examples of Plaintiff's overly broad and irrelevant discovery requests include Document Request Nos. 12, 17, 18 and 19, which seek:

> **Request No. 12:** All Financial statements including, but not limited to the following:
>
>    a) P&L for each quarter
>    b) current balance sheet
>    c) list of investors and amount investors
>    d) capitalization table
>
> **Request No. 17:** All financial reports and statements to investors of Crystal.
>
> **Request No. 18:** All income tax returns of Crystal.
>
> **Request No. 19:** All documents indicating loan indebtedness.

8

Similar to Interrogatory No. 1, these discovery requests are overly broad in time and because they seek information and documents beyond the fax at issue. Additionally, these discovery requests are in improper because they seek information and documents regarding the confidential financial information of Defendants, their investors and other potential unidentified third-parties. Information regarding Defendants' financial condition, as well as financial information regarding Crystal Queen's investors and documents regarding Crystal Queen's debts have no bearing on any of the issues in this case and, at best, would only be tangentially relevant to the parties' settlement negotiations and Defendants' anticipated motion to strike Plaintiff's class allegations. Importantly, Plaintiff failed to disclose to the Court that Defendants already produced financial for the express purpose of the parties' settlement negotiations. Additional financial information is not warranted. Therefore, Plaintiff's Motion to Compel should be denied.

### B. Some of Plaintiff's Discovery Requests Prematurely Seek Information to Identify the Members of Plaintiff's Putative Class.

Some of Plaintiff's discovery requests, including Interrogatory Nos. 7-8, 10, 11, 18, 20, 21-23 and 26 and Document Request Nos. 8-9 and 33, are premature because they seek information and documents regarding the identities of Plaintiff's putative class members before any class has been identified or certified.

For example, Interrogatory Nos. 7-8 ask:

**Interrogatory No. 7:** Identify all individuals or entities to whom Crystal sent faxes marketing goods, products, or services.

**Interrogatory No. 8:** Identify any alleged consent provided from any individual or entity to receive faxes regarding Crystal's goods, products, and or services.

In addition to being overly broad because they seek the identities of recipients of faxes sent by Crystal Queen beyond the fax at issue, these requests are clearly premature to the extent

9

they would require Defendant Crystal Queen unnecessarily expend time and resources gathering information and documents regarding all recipients of all faxes ever sent by Crystal Queen before the Court makes a determination as to whether a class should be certified and, if so, how any such class should be defined. The only relevant information at this juncture is the number of successful fax transmissions of the fax at issue, which is contained within the fax transmission logs pertinent to the fax at issue. That information is maintained solely in the Province of Ontario and Defendant Crystal Queen intended to produce it once an OBRPA order is issued by the appropriate Canadian court. The actual log of the successful recipient phone/fax numbers would not be relevant unless and until a class is certified. Furthermore, Plaintiff has not even attempted to narrow the scope of these requests. Therefore, to the extent Plaintiff's discovery requests seek information and documents regarding unidentified or uncertified members of Plaintiff's putative class, they are merely an inappropriate fishing expedition to obtain information that is not permitted under the Federal Rules of Civil Procedure and Plaintiff's Motion to Compel should be denied.

Producing the transmission logs at this point would be premature, however, because the identities of all fax recipients is not necessary to determine whether class certification is warranted. To the extent any documents exist that would show *intended* recipients, such documents are not relevant because, unlike the transmission log, any such documents would not identify the actual fax transmissions sent.

### C. Plaintiff Seeks Information and Documents Encompassed by Attorney-Client Privilege and/or the Work Product Doctrine.

Six of Plaintiff's discovery requests encompass information and documents protected from disclosure by attorney client privilege or the work product doctrine. Four of Plaintiff's

interrogatories seek communications, which are subject to attorney-client privilege. For example, Interrogatory No. 17 asks:

> **Interrogatory No. 17:** Identify all communications from Crystal regarding the subject matter of this litigation.

Defendants appropriately objected to this interrogatory because Plaintiff failed to limit the scope of communications sought by this request. As written, the interrogatory clearly encompasses communications between Defendants and their attorneys which are clearly protected by attorney-client privilege.

Next, Interrogatory Nos. 18 and 19 ask:

> **Interrogatory No. 18:** Identify all communications from Crystal regarding the marketing of its goods, products or services through the use of facsimiles.

> **Interrogatory No. 19:** Identify all communications from Crystal regarding any attempts to comply with the requirements of the Telephone Consumer Protection Act of 1991, the Junk Fax Prevention Act of 2003, or with any federal regulations promulgating the same in the marketing of its goods, products, or services through the use of facsimiles.

Similar to many of the discovery requests discussed above, including Interrogatory No. 1, these interrogatories are overly broad in time because these indiscriminately seek information and documents from Defendants without regard to when they occurred. These interrogatories are also overbroad in scope because they seek *all* communications; thus, can be read to go beyond the fax at issue. These interrogatories, as written, are so broad that they encompass even privileged communications between Defendants and their attorneys.

Plaintiff's Document Request Nos. 34 and 35 seek information regarding potential experts and trial exhibits, which is protected from disclosure at this time by the work product doctrine; those Document Requests ask for:

> **Request No. 34:** Copies of all reports and documents utilized by an expert which Crystal Queen proposes to call at trial.

**Request No. 35:** All exhibits which Crystal Queen proposes to introduce at trial. This Request shall be deemed continuing so as to require further and supplemental production if Plaintiff obtains additional documents required to be produced herein between the time of the initial production and the time of trial.

In addition to ignoring Defendants' objections, Plaintiff ignored Defendants' *responses* to these Document Requests.  First, with respect to Request No. 34, Defendants expressly stated that they have not yet determined whether they will retain any expert witnesses, but would supplement their response in accordance with any Scheduling Order entered by the Court or as required by the Federal Rules of Civil Procedure; thus, Plaintiff's discovery requests are also premature.  At this time, therefore, the information sought in this request is protected from disclosure by the work product doctrine.

Like Request No. 34, Request No. 35 is premature because Defendants have not yet determined what exhibits they will introduce at trial and at this point, such information is protected from disclosure by the work product doctrine.  Plaintiff blatantly ignores the fact that Defendants agreed to provide an exhibit list in accordance with any Scheduling Order entered by the Court or as required by the Federal Rules of Civil Procedure.

For the foregoing reasons, Plaintiff's Motion to Compel should be denied.

## II. PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES IS UNWARRANTED AND SHOULD BE DENIED.

Plaintiff's request for attorney's fees in connection with its Motion to Compel should be denied because Defendants have lodged proper objections to Plaintiff's discovery requests and Plaintiff has not met its burden of proof to show that Defendants have behaved inappropriately, and should be sanctioned.  Indeed, if this Court awards any attorney's fees, it should award them against Plaintiff for failing to meet and confer regarding Defendants' objections beyond OBRPA

and PIPEDA. Moreover, Plaintiff fails to cite any legal basis to support its request for attorney's fees.

As set forth in detail above, Defendants have ample support for the validity of their objections to Plaintiff's discovery requests. Conversely, Plaintiff has wholly failed to show that any of Defendants' objections were improper or lacked sufficient legal justification. More importantly, Plaintiff failed to show any wrongdoing on Defendants' part in their discovery responses and related objections. Therefore, this Court should deny Plaintiff's request for attorney's fees.

### III. PLAINTIFF'S MOTION FOR ISSUANCE OF LETTERS ROGATORY SHOULD BE DENIED AS OVERLY BROAD.

Plaintiff's Motion for Issuance of Letters Rogatory also should be denied because it suffers from the same flaws as Plaintiff's Motion to Compel by seeking an Order permitting all discovery included in Plaintiff's written discovery requests, which are attached to Plaintiff's motion.

In the first instance, any Letter Rogatory should be limited to documents maintained solely in the province of Ontario and covered by OBRPA. Moreover, no Letter Rogatory should issue before the Court rules on Plaintiff's Motion to Compel, which will establish the appropriate scope of discovery to which Plaintiff is entitled. As discussed above, Plaintiff's written discovery is overly broad for a variety of reasons, including that it inappropriately seeks documents and information not pertinent to the single fax at issue in Plaintiff's underlying lawsuit.

Plaintiff's written discovery is further objectionable because it non-discriminately seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence (including unnecessary confidential financial information), prematurely seeks

documents and data to identify putative class members before the Court determines whether a class should be certified and, if so, what an appropriate class definition should be, and seeks documents and data that are overly broad to the extent they encompass documents and information protected from disclosure by the attorney-client privilege and word product doctrine. Thus, any Letter Rogatory should be limited to permissible discovery of documents and data maintained solely in the Province of Ontario and pertinent to the single fax at issue.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's Motion to Compel and Plaintiff's Motion for Issuance of Letters Rogatory in their entirety.

Dated: September 28, 2017  Respectfully submitted,

By: /s/Mary Ann L. Wymore
Mary Ann L. Wymore, *pro hac vice*
GREENSFELDER, HEMKER & GALE, P.C.
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 241-9090 - Telephone
(314) 345-5488 – Facsimile
mlw@greensfelder.com – Email

Martin A. Kasten, Ark. Bar No. 99100
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
(501) 370-1456 - Telephone
(501) 244-5330 - Facsimile
mkasten@fridayfirm.com - Email

*Attorneys for Defendants*


## **CERTIFICATE OF SERVICE**

I, Mary Ann L. Wymore, hereby certify that on the 28th day of September, 2017, I presented the foregoing to the Clerk of Court for filing and uploading to the CM/ECF System which will send notification of such filing to the following:

Joe P. Leniski, Jr., Esquire  
Branstetter, Stranch & Jennings, PLLC  
223 Rosa L. Parks Ave, Suite 200  
Nashville, TN 37201  
*Attorneys for Plaintiff*

Alex G. Streett, Esquire  
James A. Streett, Esquire  
Streett Law Firm, P.A.  
107 West Main  
Russellville, AR 72801  
*Attorneys for Plaintiff*

    /s/ Mary Ann L. Wymore

*1683046*