THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MCCALL LAW FIRM, PLLC, on behalf of itself and all
others similarly situated                                                                    PLAINTIFF

v.                                    Case No. 4:15-cv-00737-KGB

CRYSTAL QUEEN, INC., doing business as Crystal Training,
RUDOLF GALAN, ADRIANA GALAN, and JOHN DOES                          DEFENDANTS

<u>ORDER</u>

Before the Court is the motion for default judgment filed by plaintiff McCall Law Firm,
PLLC, on behalf of itself and all others similarly situated ("McCall") (Dkt. No. 88).  For the
reasons set forth herein, the Court grants McCall's motion for default judgment.

I.      **Factual And Procedural History**

McCall is located in Russellville, Arkansas (Dkt. No. 4, ¶ 1).  Defendants Rudolf Galan
and Adriana Galan are residents of Ontario, Canada (*Id.*, ¶¶ 3–4).  McCall originally filed this
action against Crystal Queen, Inc., doing business as Crystal Training ("Crystal Training," and
collectively with the Galans, "defendants"), a Canadian corporation, on January 30, 2015, in the
Circuit Court of Pope County, Arkansas (Dkt. No. 3).  McCall filed an amended class-action
complaint on September 21, 2015, adding the Galans as defendants (Dkt. No. 4).

In its amended class-action complaint, McCall alleges that defendants violated the
Telephone Consumer Protection Act of 1991 ("TCPA"), which provides, as relevant here, that "[i]t
shall be unlawful for any person within the United States, or any person outside the United States
if the recipient is within the United States . . . to use any telephone facsimile machine, computer,
or other device to send, to a telephone facsimile machine, an unsolicited advertisement," unless
certain statutory exceptions apply.  47 U.S.C. § 227(b)(1)(C).  An "unsolicited advertisement" is

defined as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  47 U.S.C. § 277(a)(5).

The TCPA creates a private cause of action for violations of § 227(b)(1)(C), providing that "[a] person or entity may . . . bring . . . an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  47 U.S.C. § 227(b)(3)(B).  A court, "in its discretion," may award treble damages if a defendant "willfully or knowingly" violated the TCPA.  47 U.S.C. § 227(b)(3)(C).

On January 15, 2015, Crystal Training sent a two-page facsimile transmission to McCall advertising QuickBooks and Microsoft Excel training sessions to be conducted by Crystal Training at the DoubleTree by Hilton hotel in Little Rock, Arkansas (Dkt. No. 4, ¶ 14).  A copy of the fax is attached as Exhibit A to McCall's amended class-action complaint (*Id.*, at 14–15).  McCall claims that the fax was unsolicited and, therefore, a violation of the TCPA (*Id.*, ¶¶ 15, 26).  McCall also claims that Crystal Training willfully or knowingly violated the TCPA, entitling it to treble damages (*Id.*, ¶¶ 24, 37–40).  Finally, McCall asks the Court to pierce the corporate veil and hold the individual defendants personally liable to McCall, arguing that Crystal Training acted in concert with or as the alter ego of the Galans (*Id.*, ¶¶ 25, 41–58).

The case was removed to this Court on December 3, 2015 (Dkt. No. 1).  The Court has already determined that defendants were properly served with process (Dkt. No. 36, at 7–9).  On October 3, 2017, Martin A. Kasten of Friday, Eldredge & Clark, LLP, and Mary Ann L. Wymore and Caroline B. Paillou of Greensfelder, Hemker & Gale, P.C. ("Greensfelder"), moved to withdraw as counsel of record for defendants (Dkt. Nos. 55, 56), which the Court granted on October 10, 2017, leaving defendants without counsel (Dkt. No. 58).  As part of that order, the

Court instructed Mr. Kasten and Greensfelder to file a current and valid mailing address for each of the defendants (*Id.*, at 2).

On October 24, 2017, Mr. Kasten and Ms. Wymore notified the Court of the Galans' current mailing address (Dkt. No. 61). Mr. Kasten and Ms. Wymore further indicated that Crystal Training "is not currently active and accordingly does not have a currently functioning mailing address," and that correspondence to Crystal Queen should, therefore, be directed to Mr. Galan, a director and former manager of Crystal Training (*Id.*, at 1). Since then, however, all mail sent to defendants from the Court has been returned as undeliverable (Dkt. Nos. 73–75, 77–85, 91–93).

As part of its order terminating Mr. Kasten, Ms. Wymore, and Ms. Paillou as counsel of record for defendants, the Court required defendants to provide, within 30 days, certain information (Dkt. No. 58, at 2). Defendants did not comply with the Court's instructions. Therefore, McCall filed a motion for an order to show cause (Dkt. No. 65), and the Court issued a Second Show-Cause Order on May 8, 2018, directing the Galans to "file a written response to show cause why this litigation should not proceed against them in their *pro se* capacity," and directing Crystal Training to "file a written response to show cause why default should not be entered against it." (Dkt. No. 68, at 2). Again, defendants did not comply with the Court's instructions. On September 28, 2018, the Court directed the Clerk of Court to enter default against Crystal Training (Dkt. No. 70). That same day, a Clerk's Entry of Default was entered against Crystal Training (Dkt. No. 71).

McCall subsequently filed two status reports with the Court (Dkt. Nos. 86, 87). In its first status report, filed April 18, 2019, McCall indicated that "Counsel for the Plaintiff has continued to attempt to transmit documents, including discovery requests, to the *pro se* Galan Defendants,"

but that "the address that they once provided through respective counsel per the Court's Order is incorrect and it appears that they have now vacated this residence, leaving Counsel for the Plaintiff without a proper and valid service address." (Dkt. No. 86, at 1 (citation omitted)). McCall further indicated that "Counsel for the Plaintiff continues to investigate their whereabouts and has recently retained a private investigator whose sole purpose is to locate the Galan Defendants." (*Id.*, at 2). In its second status report, filed May 17, 2019, McCall stated that, "[s]ince the filing of the last status report, Counsel for the Plaintiff has received the report from the private investigators, who were also unable to locate the Galans." (Dkt. No. 87, at 1).

On June 6, 2019, McCall filed a motion for default judgment against the Galans and entry of final judgment against all defendants (Dkt. No. 88). To date, defendants have not filed a response to McCall's motion for default judgment.

## II.     Default-Judgment Standard

McCall now requests default judgment against defendants. Rules 37(b)(2)(A)(vi) and 16(f)(1)(C) of the Federal Rules of Civil Procedure permit a district court to enter a default judgment against a party who abuses the discovery process or fails to obey a pre-trial order, respectively. The entry of a default judgment is "committed to the sound discretion of the district court," and the Eighth Circuit reviews a district court's entry of default judgment under the abuse-of-discretion standard. *United States ex rel. Use of Time Equip. Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). Default judgments, however, are not favored by the law and "should be a 'rare judicial act.'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (quoting *Edgar v. Slaughter*, 548 F.2d 770, 773 (8th Cir. 1977)). Stated differently, there is a "judicial preference for adjudication on the merits," which "goes to the fundamental fairness of the adjudicatory process." *Oberstar v. F.D.I.C.*, 987 F.2d 494, 504 (8th Cir. 1993). Thus, "[a] court

abuses its discretion if it enters a default judgment 'for a marginal failure to comply with the time requirements.'"  *In re Jones Truck Lines, Inc.*, 63 F.3d 685, 688 (8th Cir. 1995) (quoting *Harre*, 983 F.2d at 130).  However, it is well-settled that the "harsh remedy" of default judgment under Rule 37(b)(2)(A)(vi) "is appropriate when a party's failure to comply with discovery has been due to willfulness, bad faith, or any fault of the party."  *Comiskey*, 989 F.2d at 1009 (alterations, citation, and internal quotation marks omitted); *see also Avionic Co. v. Gen. Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) ("When the facts show willfulness and bad faith, the selection of a proper sanction . . . is entrusted to the sound discretion of the district court.").  Any sanction imposed under Rule 37 must be "just" and "specifically related to the particular 'claim' which was at issue in the order to provide discovery."  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982).

### III.     Defendants' Default

In these proceedings, defendants have demonstrated a consistent pattern of failing to comply with this Court's pre-trial orders and McCall's discovery requests, warranting entry of default judgment against them.  Defendants' failure to comply was not due to a mere inability on its part to comply, *see Laclede Gas Co. v. G. W. Warnecke Corp.*, 604 F.2d 561, 566 (8th Cir. 1979), nor was it based on any claim of privilege, *see Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1329–30 (8th Cir. 1986).  Rather, defendants' conduct in this case amounts to "flagrant bad faith" and "callous disregard" of responsibility.  *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam).  Further, the record shows that McCall has been prejudiced by defendants' willful and bad-faith failure to comply.  *Cf. Avionic Co.*, 957 F.2d at 559 (8th Cir. 1992) (explaining that a party is prejudiced if the failure to make discovery impairs its ability to determine the factual merits of its claim).  Default judgment is warranted here.

### IV.     Crystal Training's Liability

It is well-established that, "[u]pon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citation and internal quotation marks omitted).   A district court may, but need not, hold an evidentiary hearing on the issue of damages. *See Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988).

Having carefully reviewed the amended class-action complaint and the exhibit attached thereto, the Court finds that McCall's factual allegations, taken as true, establish that Crystal Training willfully and knowingly violated the TCPA.  McCall is entitled to $1,500.00 in statutory damages for Crystal Training's willful and knowing TCPA violation.

### V.     The Galans' Liability

In the Eighth Circuit, whether to pierce a corporate veil is a legal determination that is governed by state law.  *See Stoebner v. Lingenfelter*, 115 F.3d 576, 579 (8th Cir. 1997); *Minn. Power v. Armco, Inc.*, 937 F.2d 1363, 1367 (8th Cir. 1991).  Under Arkansas law, "a corporation and its stockholders are separate and distinct entities, even though a shareholder may own the majority of the stock." *HRR Ark., Inc. v. River City Contractors, Inc.*, 87 S.W.3d 232, 237 (Ark. 2002).  However, "[i]n special circumstances, the court will disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party." *Anderson v. Stewart*, 234 S.W.3d 295, 298 (Ark. 2006); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003) (stating that the doctrine of piercing the corporate veil "is the rare exception, applied in the case of fraud or certain other exceptional circumstances," and is "usually determined on a case-by-case

basis").  Arkansas courts have stated that "the conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case."  *Winchel v. Craig*, 934 S.W.2d 946, 950 (Ark. Ct. App. 1996) (en banc).  "The doctrine of piercing the corporate veil is founded in equity and is applied when the facts warrant its application to prevent an injustice."  *K.C. Properties of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 15 (Ark. 2008).

In the default-judgment context, a court may pierce the corporate veil when the complaint "clearly lay[s] out the factual allegations necessary to support a claim for relief" based on the "alter-ego" theory under Arkansas law.  *In re Burwell*, 391 B.R. 831, 837 (B.A.P. 8th Cir. 2008), *aff'd*, 348 F. App'x 198 (8th Cir. 2009).  However, default judgment is not appropriate if the complaint does not adequately support imposing personal liability.  *Cf. Marshall v. Baggett*, 616 F.3d 849, 853 (8th Cir. 2010) (vacating a default judgment where the court discerned "nothing in the complaint to support an assertion that [the corporate defendant] was a sham corporation or an indistinct identity of [the individual defendant]").

With respect to McCall's veil-piercing claim, the Court has already held that McCall has made a *prima facie* showing that Crystal Training is merely the alter ego of the Galans (Dkt. No. 36, at 19–20).  The Court sees no reason to reach a different conclusion at this time.

Having carefully reviewed the record in this case, the Court determines that McCall has alleged sufficient facts to establish that the corporate form was abused to its injury and that, therefore, it may pierce the corporate veil to award a default judgment against the Galans.  Specifically, McCall contends that the Galans abused the corporate form of Crystal Training and, through that abuse, violated the TCPA (Dkt. No. 4, ¶¶ 42, 52).  It alleges that the Galans "exercised complete domination of Crystal Training in respect to the alleged facts," and that such domination

was used to commit the TCPA violation described in its complaint (*Id.*, ¶¶ 43, 53).  It also alleges

that the Galans, along with Crystal Training, "had actual notice of participation, or a higher degree

of involvement, in a plan to transmit" the unsolicited advertisements at issue in this case (*Id.*, ¶

25).

> For support, McCall states that:
>
> Crystal Training has an address that is associated with a mailbox in a UPS store. Mr. Rudolf Galan signed the terms and conditions of the Mailbox Service Agreement with UPS on March 8, 2013.
>
> "Crystal Training" is listed as the name of the corporation on the Mailbox Service Agreement associated with the address of 11 Pine Bluff Trail, Stittsville, Ontario, K2S-1E1.
>
> The insurance policy submitted with the Mailbox Service Agreement is associated with a property located at 11 Pine Bluff Trail, Stittsville, Ontario, K2S-1E1 and is in the name of Rudolf Galan.  Thus, this address is believed to be Mr. Galan's and Ms. Galan's personal address, not the corporate address for Crystal Training.
>
> Rudolf Galan is listed as a "Manager" at Crystal Consulting on his LinkedIn profile. He is listed as a Manager at Crystal Training on his ZoomInfo profile.  Crystal Training has an address of 85033-1250 Main Street, Stittsville, Ontario, k2s 1x6, Canada on his personal ZoomInfo page and the ZoomInfo page for Crystal Training.  Thus, Crystal Training has multiple addresses listed on various documents, correspondence and webpages.
>
> The registered address for Crystal Training of 166 Owl Drive, Ottawa, Ontario, Canada KIV 9P6 is listed under Peter Galan according to the LocateFamily.com. Peter Galan is believed to be a family member of Rudolf Galan.  The address is listed under Peter Galan also at another website.  This website has a Google street view picture of the building, which appears to be an apartment complex.

(*Id.*, ¶¶ 44–48) (footnotes omitted).

These factual allegations satisfy the standard to state a veil-piercing claim.  Accordingly,

the Court finds that McCall has stated a claim that Crystal Training is the alter ego of the Galans

and, therefore, not the real party in interest in this TCPA action.  The Galans are personally liable

for the default judgment against Crystal Training.

VI.     **Attorneys' Fees And Costs**

The TCPA is not a fee-shifting statute.  However, Federal Rules of Civil Procedure 16(f)(2) and 37(b)(2)(C) provide for a mandatory award of "reasonable expenses, including attorney's fees," against a party or its attorneys for discovery abuse, unless that party's disobedience "was substantially justified or other circumstances make an award of expenses unjust."  Rules 16 and 37, interpreted consistent with their purposes, authorize "an award encompassing all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly."  *In re Stauffer Seeds, Inc.*, 817 F.2d 47, 50 (8th Cir. 1987) (citation and internal quotation marks omitted).  The Supreme Court has explained that sanctions imposed under Rules 16 and 37 "must be applied diligently both 'to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.'"  *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763–64 (1980) (alteration in original) (quoting *Nat'l Hockey League*, 427 U.S. at 643).  An award of discovery sanctions is reviewed under the abuse-of-discretion standard.  *See Comiskey*, 989 F.2d at 1012; *In re Stauffer Seeds*, 817 F.2d at 50.

Here, defendants have demonstrated a consistent pattern of failure to comply with McCall's discovery requests and with this Court's discovery-related orders.  "Such abusive conduct should not, can not, and will not be cost-free."  *Comiskey*, 989 F.2d at 1012.  Consistent with Eighth Circuit precedents, the Court has considered only the amount of fees and costs associated with defendants' failure to comply with court orders and the Federal Rules of Civil Procedure.  *See id.*

McCall requests $137,463.76 in attorneys' fees and $1,773.89 in costs as a discovery sanction (Dkt. No. 88, at 2).  McCall's request for attorneys' fees and costs is supported by the declarations of Joe P. Leniski of Branstetter, Stranch & Jennings, PLLC ("Branstetter") (Dkt. No.

88-1), and James A. Streett of the Streett Law Firm, P.A. ("Street Law Firm") (Dkt. No. 88-2). Mr. Leniski insists that a reasonable rate for his time was $750.00, and Mr. Street claims that a reasonable rate for his services was $495.00.

Determining a reasonable award of attorneys' fees is a two-step process. "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). "When determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 529 (8th Cir. 2019) (quoting *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005)). The party seeking an award of fees should "submit adequate documentation supporting the number of hours claimed," and the court "may deduct hours from this initial number if counsel's documentation is inadequate." *Gay v. Saline Cty.*, No. 4:03CV00564 HLJ, 2006 WL 3392443, at *2 (E.D. Ark. Oct. 20, 2006). Once calculated, the lodestar amount is presumptively reasonable, *see Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), but may be adjusted upward or downward, as the Court finds necessary based on the facts and circumstances of the particular case, *see Hensley*, 461 U.S. 434. "Attorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse of discretion." *Hanig*, 415 at 825.

As the TCPA is not a fee-shifting statute, there is little authority to guide this Court in determining a reasonable hourly rate for McCall's counsel's services. In 2012, the Eighth Circuit found an hourly rate of $400.00 to be reasonable for experienced attorneys in the Little Rock area.

*See Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 998–99 (8th Cir. 2012)[1]  While *Little Rock School District* was decided eight years ago, that school desegregation case involved factual and legal issues more complex than those presented here.  The Court finds no justification for awarding a higher hourly rate to Mr. Leniski or Mr. Street and will, therefore, reduce their rates to $400.00 per hour.  Further, the Court notes that Branstetter's billing records indicate that, along with Mr. Leniski, an individual identified only by his or her initials, "M.Y.," also worked on this case and billed at a rate of $175.00 per hour.  M.Y. appears to be a paralegal, and the Court believes that $125.00 is a reasonable hourly rate for a paralegal in this District.  *See id.*

The Court will further reduce the amount McCall requests to specifically limit the award to extra work performed by McCall due to defendants' misconduct during the appropriate time frame.  In other words, the Court will only award fees incurred between December 15, 2017, the date on which McCall filed its motion for an order to show cause, and June 6, 2019, the date on which McCall filed its motion for default judgment.  Having carefully reviewed the extensive documentation submitted by McCall in support of its request for an award of attorneys' fees, the Court determines that Mr. Leniski reasonably billed 5.9 hours at a reasonable hourly rate of $400.00, that Mr. Streett reasonably billed 22.38 hours at a reasonable hourly rate of $400.00, and that M.Y. reasonably billed 7.3 hours at a reasonable hourly rate of $125.00.  Accordingly, the Court calculates the lodestar amount as $12,216.50.  Additionally, the Court will award McCall $1,773.89 in costs, resulting in a total fee award of $13,998.39, calculated as follows:

Branstetter: (5.9 x $400.00) + (7.3 x $125.00) + $878.11 = $4,150.61.

Street Law Firm: (22.38 x $400.00) + $895.78 = $9,847.78.

$4,150.61 + $9,839.78 = $13,998.39.

---

[1]  The Court acknowledges that Branstetter is located in Nashville, Tennessee.

In sum, the Court will award McCall $13,998.39 in attorneys' fees and costs.  This sum, while significant, is warranted by defendants' egregious abuse of the discovery process and flagrant disregard of the Court's discovery and other pre-trial orders, is far less than the amount originally requested by McCall, is within the Court's discretion, and is supported by the record. *See Schubert v. Pfizer, Inc.*, 459 F. App'x 568 (8th Cir. 2012) (determining that the district court did not abuse its discretion in awarding defendant $53,255.55 in costs and fees as a sanction for plaintiff's willful violation of discovery orders that resulted in dismissal with prejudice of his employment-discrimination suit); *Comiskey*, 989 F.2d at 1012 (concluding that defendant's consistent pattern of failure to comply with plaintiff's discovery requests and with the magistrate judge's orders warranted $5,407.50 in attorney's fees as a discovery sanction); *Monsanto Co. v. Ralph*, No. 4:00CV135RWS, 2002 WL 33943871, at *4 (E.D. Mo. Feb. 15, 2002) (requiring defendants to reimburse plaintiff $104,506.47 as a sanction for defendants' discovery-related misconduct).

## VII.    The Doe Defendants

McCall has neither identified nor served the Doe defendants.  Under Rule 4(m) of the Federal Rules of Civil Procedure:

> If a defendant is not served within 90 days after the complaint is filed, the court—
> on motion or on its own after notice to the plaintiff—must dismiss the action
> without prejudice against that defendant or order that service be made within a
> specified time.  But if the plaintiff shows good cause for the failure, the court must
> extend the time for service for an appropriate period.

"There is no comprehensive definition of what constitutes good cause sufficient to warrant a mandatory extension under Rule 4(m)." *Colasante v. Wells Fargo Corp.*, 81 F. App'x 611, 613 (8th Cir. 2003) (per curiam).  "A showing of good cause requires at least 'excusable neglect'— good faith and some reasonable basis for noncompliance with the rules." *Kurka v. Iowa Cty.*, 628

F.3d 953, 957 (8th Cir. 2010) (quoting *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996)).

McCall is ordered to show cause, within 14 days from the entry of this Order, why its claims against the Doe defendants should not be dismissed for failure to serve.

## VIII.   Conclusion

For the foregoing reasons, the Court grants McCall's motion for default judgment against Crystal Training and the Galans (Dkt. No. 88).  When it enters final default judgment in this case, the Court intends to award McCall $1,500.00 in statutory damages against Crystal Training and to pierce the veil of Crystal Training to thereby impose liability upon the Galans.  The Court also intends to award McCall $13,998.39 in reasonable attorneys' fees and costs.  Finally, the Court orders McCall to show cause, within 14 days from the entry of this Order, why its claims against the Doe defendants should not be dismissed for failure to serve.  The Court will enter final default judgment after McCall has responded to the Court's Show-Cause Order or the time to do so has expired.

It is so ordered this 21st day of May, 2020.

Kristine G. Baker
United States District Judge